IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SUNSTONE ENGINEERING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PURE TECHNOLOGY CONSULTING, LLC; and EXODUS TRADING GROUP, LLC,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:26-cv-00618<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Pending before the court is Plaintiff Sunstone Engineering, LLC's Motion to Remand.[1] For the reasons explained below, the Motion is DENIED.

**FACTUAL ALLEGATIONS**[2]

Sunstone is a Utah limited liability company that manufacturers micro-welders, including welders for the permanent jewelry industry.[3] A substantial portion of the permanent jewelry industry uses Sunstone's products, services, and supply chain.[4] Tony Price is Sunstone's Director of Business Development.[5] In February 2024, Price began designing an integrated software application to operate alongside Sunstone's hardware.[6] By the end of 2025, Sunstone

---

[1] Dkt. 13, *Plaintiff's Motion to Remand and Memorandum in Support* (*Motion*).

[2] The following facts are drawn from the Complaint. *See* Dkt. 1-1, *Exhibit A* (*Complaint*).

[3] *Id.* ¶ 2.

[4] *Id.* ¶ 16.

[5] *Id.* ¶ 17.

[6] *Id.*; *see also id.* ¶ 3.

committed to developing the software which it now markets as Sunstone Studio, "a multi-tenant software-as-a-service tailored to the permanent-jewelry industry, integrated with Sunstone's welders, gift-card and warranty systems, supply chain, and customer base."[7]

Defendant Pure Technology Consulting, LLC (PTC) is a South Carolina limited liability company, and Defendant Exodus Trading Group LLC is a Florida limited liability company.[8] In late 2025 or early 2026, PTC's representative Amin Said approached Price about Defendants selling or licensing their own software application, ChainHQ, to Sunstone.[9] Around January 9, 2026, Said gave Price a recorded screen-share demonstration of Defendants' software (the Demo).[10] The Demo was a user-interface presentation, including ChainHQ's administrative or management screens.[11] The Demo was distributed through a private link, and Sunstone was not given a downloadable copy of the recording.[12]

On January 13, 2026, PTC, Sunstone, and Exodus entered into a non-disclosure agreement (NDA).[13] The NDA's stated purpose was to facilitate "discussions and review [of] proprietary information related to a software application and related technologies (the 'App') for the purpose of evaluating a potential white-label partnership, licensing arrangement, acquisition, or other business relationship."[14] The NDA is governed by the laws of the South Carolina.[15]

---

[7] *Id.* ¶ 20.

[8] *Id.* ¶¶ 8–9.

[9] *Id.* ¶¶ 5, 21.

[10] *Id.* ¶ 26.

[11] *Id.* ¶ 28.

[12] *Id.* ¶ 26.

[13] *Id.* ¶¶ 21–22.

[14] *Id.* ¶ 22.

[15] *Id.* ¶ 25.

Sunstone ultimately declined to purchase or license PTC/Exodus's software and elected to continue developing Sunstone Studio.[16]

Sunstone Studio includes the following components: "a tiered point-of-sale module integrated with Sunstone's welders and supply chain ('Shop Sunstone'), a customer-relationship-management module, a private-party booking engine, a warranty-management module, a gift-card system, an artist storefront, a hardware promotion and cross-sell module, an integrated AI business coach branded as 'Sunny,' and Sunstone-specific reporting."[17] The PTC/Exodus product Said demonstrated for Price on January 9, 2026 does not include analogous features.[18]

Sarah Jenkins operates a permanent jewelry business, provides training in the industry, and has a collaborative relationship with PTC.[19] In a text message sent in or around March 2026, Jenkins told Price, "Sunstone's website was 'literally' her 'website and HQs website mashed up,' that '[w]hoever it was, word for word, copied our websites,' that '[t]he back end literally is the same,' and that '[y]ou guys can not release this.'"[20]

Sunstone alleges Jenkins' message is inconsistent with the NDA and has cast a cloud over Sunstone's imminent commercial launch of Sunstone Studio.[21]

## PROCEDURAL HISTORY

On May 29, 2026, Sunstone filed its Complaint in Utah state court bringing six causes of action: (1) declaratory judgment that Defendants breached the NDA; (2) breach of the NDA;

---

[16] *Id.* ¶ 31.

[17] *Id.* ¶ 33.

[18] *Id.* ¶¶ 26, 33.

[19] *Id.* ¶ 35.

[20] *Id.*

[21] *Id.* ¶ 36.

(3) declaratory judgment that Sunstone has not breached the NDA; (4) declaratory judgment that Sunstone Studio is not included in the NDA's definition of confidential information; (5) declaratory judgment that Sunstone has not violated the South Carolina Trade Secrets Act; and (6) declaratory judgment that Sunstone has not violate Utah's Uniform Tade Secrets Act.[22]

On July 2, 2026, Exodus Trading Group removed the action to this court.[23] On July 7, 2026, Sunstone filed its Motion asking the court to remand back to Utah state court.[24] The Motion is fully briefed and ripe for review.[25]

## LEGAL STANDARD

"A case originally filed in state court may be removed to federal court if, but only if, 'federal subject-matter jurisdiction would exist over the claim.'"[26] Under 28 U.S.C. § 1441, a defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[27] The removing party bears the burden of establishing jurisdiction by a preponderance of the evidence.[28]

---

[22] *Id.* ¶¶ 38–83.

[23] Dkt. 1, *Notice of Removal*. PTC consented to removal. *Id.* ¶ 20.

[24] *Motion*.

[25] Dkt. 18, *Defendants' Response in Opposition to Plaintiff's Motion to Remand* (*Opposition*); Dkt. 21, *Plaintiff's Reply Memorandum in Support of Motion to Remand* (*Reply*).

[26] *Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1023 (10th Cir. 2012) (quoting *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1220 (10th Cir 2011)).

[27] 28 U.S.C. § 1441(a).

[28] *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014).

Here, removal is premised on this court's diversity jurisdiction, which requires the amount in controversy to exceed $75,000 and complete diversity of citizenship between the adverse parties.[29] Sunstone contests the amount in controversy element.[30]

When the claimant seeks declaratory relief, as here, "the amount in controversy is measured by the value of the object of the litigation."[31] Under the "either viewpoint" rule, the court "consider[s] [whether] either the value of a judgment from the viewpoint of the plaintiff or the cost from the viewpoint of the defendant" exceeds the statutory threshold.[32]

A "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."[33] That amount should be accepted unless challenged.[34] If the plaintiff contests the defendant's allegation, 28 U.S.C. § 1446(c)(2)(B) requires evidence establishing the amount by a preponderance of the evidence.[35] The "defendant must affirmatively establish jurisdiction by proving jurisdictional facts that made it possible that $75,000 was in play."[36] "[T]he case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum."[37]

---

[29] *Notice* ¶¶ 6–16; 28 U.S.C. § 1332(a).

[30] *See generally Motion*. The parties are completely diverse. *See Notice* ¶¶ 10–12.

[31] *Phelps Oil & Gas, LLC v. Nobel Energy Inc.*, 5 F.4th 1122, 1126 (10th Cir. 2021) (quoting *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006)).

[32] *Id.* ("In other words, [the court] look[s] to 'the pecuniary effect an adverse declaration will have on either party to the lawsuit.' (quoting *City of Moore v. Atchison, Topeka & Santa Fe Ry. Co.*, 699 F.2d 507, 509 (10th Cir. 1983)).

[33] *Dart Cherokee*, 574 U.S. at 89.

[34] *Id.* at 88.

[35] *Id.* at 88–89.

[36] *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008).

[37] *Id.* at 954 (quoting *Meridian Security Ins. Co. v. Sadowski,* 441 F.3d 536, 542 (7th Cir.2006)).

## ANALYSIS

The Motion argues the amount in controversy requirement is not satisfied for two reasons: (1) the notice of removal fails to adequately plead the amount in controversy; and (2) Defendant fails to establish the amount by a preponderance of the evidence.[38] The court rejects both arguments in turn and concludes Defendants establish the amount in controversy here.

The Motion first argues the Notice of Removal fails to sufficiently allege the required amount in controversy.[39] The Motion relies on three district court cases applying the Tenth Circuit's outdated requirement that the notice of removal itself allege "the underlying facts supporting [the] assertion that the amount in controversy exceeds [$75,000]."[40] But in 2014, the Supreme Court adopted a lower standard for notices of removal: "a removal notice need only plausibly allege, not detail proof of, the amount in controversy."[41] Here, the Notice sufficiently alleges the amount in controversy. Specifically, the Complaint states, "[t]he value of these claims, taken together, exceed $75,000, exclusive of interest and costs."[42] The claims include a breach of an NDA and misappropriation of a trade secret related to software.[43] It is plausible that the value of these claims exceeds $75,000.

---

[38] *Motion* at 2.

[39] *Id.* at 5–6.

[40] *Kirby v. Teachers Inc. Co.*, No. 2:05-CV-00117-DS, 2005 WL 1000249, *1 (D. Utah Apr. 28, 2005) (quoting *Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir. 1995)); *see also Four Aces Mobile Home Estates v. Lundahl*, 35 F. Supp. 2d 1337, 1339–40 (D. Utah 1998) (also applying *Laughlin*, 50 F.3d at 873); *Boeing Wichita Credit Union v. Wal-Mart Real Est. Bus. Tr.*, 370 F. Supp. 2d 1128, 1129–30 (D. Kan. 2005) (same).

[41] *Dart Cherokee*, 574 U.S. at 83.

[42] *Notice of Removal* ¶ 16.

[43] *See Complaint* ¶¶ 38–83.

Sunstone also argues PTC has not proved the alleged amount in controversy.[44] Under 28 U.S.C. § 1446, Defendants must establish this element by a preponderance of the evidence.[45] The Motion argues they fail to do so.[46] The court disagrees.

As a threshold matter, the court addresses the evidence it will consider in assessing whether Defendants meet their burden. Here, Exodus removed this action, and PTC consented to the removal.[47] Sunstone argues Exodus alone bears the burden of establishing this court's jurisdiction and it cannot rely on the Said Declaration, because Said is a PTC representative and the Declaration is based exclusively on PTC's business records.[48] This argument is without merit. Sunstone has not identified, and the court is not aware of, any authority requiring relevant evidence to come from a representative of the defendant with the burden to satisfy that defendant's burden.[49]

Under the "either viewpoint rule," the value of the lawsuit is the value to Sunstone if it obtained the declaration it seeks or the cost to Defendants if it loses the rights Sunstone is trying to take.[50] Defendants argue the object of the litigation is the proprietary technology underlying ChainHQ, which the parties themselves valued in the proposal Defendants gave Sunstone in early 2026.[51] The court agrees.

---

[44] *See Motion*; *Reply* at 4–6.

[45] *See* 28 U.S.C. § 1446(2)(B); *see also Dart Cherokee*, 574 U.S. at 88–89.

[46] *Motion* at 6–9; *see also Reply* at 4–14.

[47] *See Removal*.

[48] *Reply* at 3–4.

[49] *See id.*

[50] *See Phelps Oil*, 5 F.4th at 1126.

[51] *Opposition* at 5.

Said declares, "After Sunstone approached PTC about acquiring or white-labeling ChainHQ, I caused PTC to prepare and deliver to Sunstone a written proposal dated February 5, 2026."[52] The Proposal included the following three payment structures:

a. A non-exclusive license carried an initial development fee of $40,000, plus a maintenance fee of $4,000 per month for one to one hundred users, plus an additional $2,000 per month for each additional one hundred users. On this option alone, the first-year price to Sunstone would have been approximately $88,000 (a $40,000 development fee plus $48,000 in annual maintenance).
b. A twelve-month exclusive license carried the same $40,000 development fee and $4,000-per-month maintenance fee, plus a 12% revenue share and buyout eligibility after $350,000 in annual revenue, with the buyout priced at five times projected Year-3 annual revenue (or eight times Year-1 revenue if Sunstone achieved $1,000,000 or more in Year 1).
c. A three-year exclusivity structure carried the same $40,000 development fee, tiered maintenance fees capped at $5,000 per month, and a revenue share of 25% to 30%, with buyout eligibility after $350,000 in annual revenue.[53]

Said represents, "The Proposal reflects the terms on which PTC was prepared to license the ChainHQ technology to Sunstone."[54]

All three of the payment structures value Sunstone's use of the ChainHQ technology above $75,000. This sufficiently establishes the amount-in-controversy at this stage in the litigation.

Sunstone's arguments to the contrary are unavailing. First, relying on *Phelps Oil & Gas, LLC v. Noble Energy Inc*,[55] Sunstone argues Said values the wrong object.[56] In *Phelps Oil*, the Tenth Circuit dismissed the case for lack of jurisdiction because under the "'either viewpoint' rule, neither the value to [the plaintiff] nor the cost to either defendant . . . would result in more

[52] Dkt. 18-1, *Declaration of Amin Said in Support of Defendants' Response to Opposition to Plaintiff's Motion for Remand* (*Said Declaration*) ¶ 8.

[53] *Id.* ¶ 9.

[54] *Id.* ¶ 10.

[55] 5 F.4th 1122 (10th Cir. 2021).

[56] *Reply* at 6–8.

than $75,000 at controversy."[57] There, two defendants had oil and gas contracts between them worth millions of dollars.[58] The plaintiff, a gas-royalty recipient, brought suit to recover underpaid royalties, which totaled approximately $1,000.[59] Although the royalty at issue was valued at only $1,000, one defendant argued it met the $75,000 threshold because the other defendant could weaponize a declaratory judgment in the plaintiff's favor to hold it liable for all underpayments in future litigation.[60] The Circuit held the district court lacked subject matter jurisdiction because the amount in controversy was not satisfied. While the claim implicated contracts between the defendants worth several million dollars, the evidence showed the value of the claims in the lawsuit was $1,000.[61] And although any declaratory relief might be used by future plaintiffs in subsequent litigation, the amount in controversy of the current litigation could not "be based on contingent, speculative, or collateral claims that could possibly occur as a result of the judgment."[62]

*Phelps* is distinguishable from the facts here. The Circuit in *Phelps* concluded the oil and gas contracts worth millions of dollars were not the object of the litigation.[63] Those contracts were between the defendants, and while the lawsuit implicated those contracts, the object of the litigation was the royalties due to plaintiff, which the parties agreed was about $1,000.[64] Here,

---

[57] *Phelps Oil*, 5 F.4th at 1124.

[58] *Id.* at 1124–25.

[59] *Id.* at 1124–1125, 1126 n.1.

[60] *See id.* at 1125–1127.

[61] *Id.* at 1127–28.

[62] *Id.* at 27; *see also id.* at 1124 ("Though the contracts between [the defendants] are worth millions of dollars, [the court] cannot base federal jurisdiction on potential future litigation involving the defendants.").

[63] *See Phelps*, 5 F.4th at 1126.

[64] *Id.* at 1124–26 & n.1.

the object of the litigation is the value of Defendants' trade secret—ChainHQ.[65] Unlike in *Phelps*, the parties here do not agree to the value of the trade secret.[66] The Proposal provides a valuation of Defendants' trade secret as between the parties, and the record has no evidence of a lesser valuation.[67] Accordingly, the court may rely on the Proposal as evidence it is possible more than $75,000 is at issue here.[68]

Second, Sunstone argues the Proposal fails to adequately value the contract because it rejected the Proposal and the Said Declaration is uncorroborated, "interested principal's opinion[]."[69] But Sunstone provides no facts disputing Said's declaration.[70] At this stage, it is Defendants' burden to show the amount in controversy by a preponderance of the evidence. Because no facts dispute the Said Declaration, Defendants carry that burden.[71]

Accordingly, based on the allegations in the Complaint and the Said Declaration, the court concludes Defendants have "affirmatively establish[ed] jurisdiction by proving jurisdictional facts that made it possible that $75,000 [is] in play."[72]

---

[65] *See Complaint*.

[66] *Compare Phelps*, 5 F.4th at 1126 n.1 (stating the defendants did not dispute the amount the plaintiff would receive in damages), *with Opposition* at 5–9 (valuing ChainHQ based on the Proposal's licensing options, monetary damages under the NDA, and avoided development costs); *Reply* at 2, 6–16 (first arguing the value of the lawsuit is not the value of ChainHQ but the "pecuniary effect of the declarations Sunstone seeks," and then arguing PTC has not established ChainHQ's value because Sunstone rejected the Proposal, PTC has not established any contingent buyouts exist, and no judgment could reach development costs).

[67] *See Said Declaration* ¶¶ 8–10.

[68] *See McPhail*, 529 F.3d at 955.

[69] *Reply* at 8–10, 12–14.

[70] *See id.*

[71] Because the court finds the Said Declaration sufficiently establishes the amount in controversy, the court does not reach Sunstone's remaining arguments. *See Reply* at 10–12 (arguing Defendants' "sunk development costs" theory and "unquantified lost profits" theory do not establish the amount in controversy).

[72] *See McPhail*, 529 F.3d at 955 (emphasis omitted).

**CONCLUSION**

For the reasons explained above, the Motion[73] is DENIED.

SO ORDERED this 15th day of September, 2026.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

[73] Dkt. 13.